**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| AMBER COOPER, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>TELMATE LLC d/b/a VIAPATH TECHNOLOGIES,<br><br>*Defendant*. | Case No. 1:24-cv-1622 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, APPROVAL OF NOTICE PLAN, AND APPOINTMENT OF CLASS COUNSEL**

**INTRODUCTION**

Plaintiff Amber Cooper ("Plaintiff") respectfully moves for entry of an order granting preliminary approval of this proposed class action settlement consisting of a $4,225,000 all cash, non-reversionary common fund, directing notice of the proposed class action settlement to the Settlement Class, and scheduling a hearing to consider final approval of the settlement. For the reasons set forth below, Plaintiff respectfully requests that the Court enter the proposed order granting this motion. Following hard-fought settlement negotiations and a full day of mediation with an experienced class action mediator, the Parties[1] have reached a settlement to resolve claims arising from the Security Incident that impacted Telmate's system in August 2020. The settlement creates a ***non-reversionary*** common fund of $4,225,000 for the benefit of the Settlement Class Members. From this Settlement Fund, Settlement Class Members will be able to claim substantial monetary benefits, including: (A) Pro Rata Cash Payments; and (B) reimbursement of documented out-of-pocket losses that more likely than not resulted from the Security Incident, up to $5,000 per Settlement Class Member. The Settlement Fund will also pay the costs of notice and administration and, subject to Court approval, a Service Award to the Settlement Class Representative and attorneys' fees and expenses.

The settlement is a favorable result for the Settlement Class, securing valuable benefits tailored to the facts of the case. The settlement is fair, reasonable, and adequate, and meets the requirements of Rule 23(e). Plaintiff thus moves for an order preliminarily approving the settlement, directing that notice be issued to the Settlement Class, and scheduling a Final Approval Hearing. In support of the motion, Plaintiff submits the Settlement Agreement (**Exhibit 1** hereto)

[1] The Parties to the Settlement are the Plaintiff, who is also the proposed Settlement Class Representative, on behalf of the proposed Settlement Class, and Defendant Telmate LLC d/b/a Viapath Technologies ("Telmate" or "Defendant"). Capitalized terms used in this memorandum have the same meaning as in the Settlement Agreement ("S.A."), attached hereto as **Exhibit 1**.

and the declaration of Proposed Class Counsel Kevin Laukaitis of Laukaitis Law LLC ("Laukaitis Decl."), attached hereto as **Exhibit 2**. Plaintiff also submits the Declaration of Christie K. Reed of Kroll Settlement Administration LLC ("Reed Decl."), attached hereto as **Exhibit 3**. Plaintiff also submits a proposed preliminary approval order.

## I. FACTUAL BACKGROUND

Telmate provides communication services to incarcerated individuals and their families through platforms such as GettingOut, VisitNow, Command, Telmate Inmate Telephone, and Guardian. Incarcerated individuals and their families have no meaningful choice in communication providers—if they wish to communicate, they must use Telmate's services. FAC ¶¶ 1-2. By no later than August 13, 2020, a third-party contractor engaged by Telmate left a database containing customers' personal information exposed on the internet. One or more unauthorized individuals accessed the database, downloaded information from it, and posted that information on the dark web. FAC ¶ 5. The Personal Information compromised in the Security Incident included, but was not limited to, full names, dates of birth, phone numbers, email addresses, usernames paired with passwords, home addresses, driver's license numbers, passport numbers, Social Security numbers, payment card numbers, financial account information, call metadata, written communications between incarcerated and non-incarcerated individuals, and grievance forms submitted to correctional facilities. FAC ¶ 11.

Upon becoming aware of the Security Incident in 2020, Telmate notified approximately 44,360 individuals that their information had been compromised. FAC ¶ 6. Additional individuals remained unaware of the breach until 2024, when an FTC investigation and enforcement action compelled Telmate to provide broader disclosure. FAC ¶ 53. Plaintiff Amber Cooper is among the

individuals who received notice of the Security Incident from Defendant on September 5, 2024. FAC ¶ 25.

Plaintiff Cooper has alleged a confirmed dark-web publication of her sensitive information. FAC ¶¶ 25, 52. Plaintiff further alleges confirmed fraudulent charges and unauthorized purchases on her Cash App, Venmo, PayPal, and Capital One Credit Card, resulting in the forced closure of her Cash App and Venmo accounts. FAC ¶ 27. She also incurs ongoing out-of-pocket expenses for Verizon Secure and Google One credit monitoring services to detect continued misuse of her exposed data. FAC ¶ 31.

Plaintiff alleges that, as a result of the Security Incident, she suffered actual misuse of her personal information, fraudulent financial activity, and incurred expenses for ongoing credit monitoring.

## II. PROCEDURAL BACKGROUND

In September 2024, the civil action of *Cooper v. Telmate LLC d/b/a ViaPath Technologies*, No. 1:24-cv-1622, was filed in the United States District Court for the Eastern District of Virginia, asserting claims individually and on behalf of a putative nationwide class arising from the Security Incident. The Complaint alleges claims of negligence, breach of implied contract, and unjust enrichment.

On November 1, 2024, Telmate filed a Motion to Dismiss or Stay Proceedings, ECF No. 12, arguing in part that Plaintiff lacked Article III standing in light of the then-pending Fourth Circuit decision in *Holmes v. Elephant Insurance Co.*, No. 23-1782 (4th Cir.). Plaintiff filed her First Amended Class Action Complaint on December 6, 2024. ECF No. 19. On December 27, 2024, Telmate filed a new Motion to Dismiss the First Amended Class Action Complaint or to Stay Proceedings. ECF No. 22. On January 16, 2025, the Parties filed a Joint Motion to Stay

Proceedings pending the Fourth Circuit's decision in *Holmes v. Elephant Insurance Co.*, ECF No. 27, which the Court granted on January 17, 2025, staying all proceedings and removing the case from the active docket. ECF No. 28. In October 2025, the Fourth Circuit issued its decision in *Holmes*.

During this same time frame, the Parties began settlement discussions and ultimately agreed to participate in private mediation. In the lead-up to the mediation, the Parties engaged in intensive informal discovery to fully inform both Parties of the facts of this case. The Parties also both prepared fulsome mediation statements. On April 2, 2026, the parties participated in a full-day mediation facilitated by experienced mediator Jill R. Sperber, Esq., of Judicate West. Ms. Sperber is an experienced class action mediator with extensive experience mediating commercial class actions, including numerous data privacy class actions. After a full day of negotiations, the Parties reached an agreement in principle on the amount of the $4,225,000.00 Settlement Fund. The Parties thereafter negotiated the granular terms of the Settlement and finalized the Settlement Agreement and its exhibits.

While the negotiations were professional throughout, they were marked by significant factual and legal disputes impacting the value of the case. With Ms. Sperber's assistance and guidance, the Parties were able to reach a resolution. At all times, the Parties conducted negotiations at arm's length and free of any collusion. Attorneys' fees were not discussed in any manner during the mediation, with the Parties only negotiating the total amount of the non-reversionary common Settlement Fund from which any award of attorneys' fees will be made.

## III. TERMS OF PROPOSED SETTLEMENT

The terms of the proposed Settlement are summarized below. The full terms are set forth in the proposed Settlement Agreement.

**The Settlement Class Definition**

The proposed Settlement Class is defined as: "All individuals within the United States of America whose Personal Information was impacted during the Security Incident experienced by Defendant on approximately August 13, 2020." S.A. ¶ 1.40. Excluded from the Settlement Class are: (1) the Judge presiding over the Action, and members of her family, (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former officers and directors; (3) Persons who timely and validly request exclusion from the Settlement pursuant to Section VI of the Settlement Agreement; and (4) the successors or assigns of any such excluded Persons. The Settlement Class consists of approximately 431,031 individuals. *Id.*

**Monetary Compensation**

In two installments, Telmate will pay $4,225,000 into a Settlement Fund for class benefits, notice and administration costs, fees, expenses, and service award to the Class Representative. S.A. ¶ 2.2. No proceeds will revert to Telmate. The specific benefits available to Settlement Class Members are detailed in the Settlement Agreement (Exhibit 1), and include:

**Pro Rata Cash Payments**. All Settlement Class Members may claim a pro rata cash payment ("Cash Payment") by submitting a Claim Form to the Settlement Administrator no later than 90 days after the Notice Date, or such other deadline approved by the Court ("Claims Deadline"). The Cash Payment amount per valid claim will be determined by the amount remaining in the Settlement Fund after deductions for valid out-of-pocket loss claims, Service Award, Costs of Settlement Administration, and any Fee Award and Costs. S.A. ¶ 3.2. The Settlement makes claiming this pro rata cash payment straightforward. The proposed Short Notice (Exhibit B to the Settlement Agreement) is a multi-panel postcard that will be mailed to Settlement

Class Members for whom physical mailing addresses are identified. That postcard includes a "tear-off" panel Claim Form with prepaid return postage that can be used to claim the pro rata cash payment. Settlement Class Members need only to "check the box" indicating they wish to receive the Pro Rata Cash Payment, sign and date the claim form, and mail it to the Settlement Administrator.

**Documented Out-of-Pocket Loss Claims**. In addition to the Pro Rata Cash Payment, Settlement Class Members may also claim compensation for unreimbursed losses upon submission of a valid and timely Claim and supporting documentation. Out-of-Pocket Losses must more likely than not result from the Security Incident and are capped at a maximum amount of $5,000. S.A. ¶ 3.3(a). The Settlement Administrator will determine whether the requirements for an Out-of-Pocket Loss Claim have been satisfied, subject to the claim-resolution procedures in Section IV of the Settlement Agreement.

Settlement Class Members may claim both of these monetary benefits. However, Settlement Class Members seeking reimbursement for documented out-of-pocket losses must complete and submit either a written or online Claim Form to the Settlement Administrator, postmarked or electronically submitted on or before the Claims Deadline. The Settlement Agreement provides that claims for Documented Out-of-Pocket Losses and Pro Rata Cash Payments will be increased or decreased pro rata to consume the remaining amount of the Settlement Fund after payment for notice and administration costs, service award payments approved by the Court, and attorneys' fees and expenses awarded by the Court. S.A. ¶¶ 3.2, 3.3.

**Proposed Notice and Claims Program**

Proposed Class Counsel has retained, and requests that the Court appoint Kroll Settlement Administration LLC as Settlement Administrator to provide notice to Settlement Class Members

and to process claims. Kroll estimates that the Costs of Settlement Administration will be up to $493,077, which will be paid from the Qualified Settlement Fund. S.A. ¶¶ 5.2, 11.2; Laukaitis Decl. ¶ 13. The forms of notice (Long Notice and Short Notice, attached to the Settlement Agreement as Exhibits B and C) are clear and concise and directly apprise Settlement Class Members of all the information they need to know to make a claim, to opt out, or to object to the Settlement. Fed. R. Civ. P. 23(c)(2)(B). The Notice Plan satisfies the "best notice practicable" standard pursuant to Rule 23 of the Federal Rules of Civil Procedure through a combination of direct mailed notice and supplemental notice designed to reach Settlement Class Members through multiple channels. S.A. ¶¶ 1.24, 5.1; *see also* Reed Decl. The Settlement Administrator will use reasonable address-search procedures to identify mailing addresses and will use updated address information, including National Change of Address ("NCOA") processing, address searches for returned mail, and re-mailing procedures where appropriate. S.A. ¶ 5.1. The Notice Plan will also include supplemental notice through publication, targeted digital advertising, search advertising, social media advertising, and reasonable efforts to provide notice within correctional facilities. *Id.* The Notice Plan is designed to achieve approximately eighty percent (80%) reach. *Id.*; Laukaitis Decl. ¶ 14. Moreover, the Long Form Notice will be posted on the Settlement Website, along with other important documents such as the Settlement Agreement, and a toll-free help line will be available to answer Settlement Class Members' questions. S.A. ¶¶ 1.43, 5.2.

In proposed Class Counsel's experience, the reach of the Notice Plan meets that of other court-approved notice programs, and has been designed to meet due process requirements, including the "desire to actually inform" requirement. The Notice Plan is thus the best notice practicable under the circumstances of this case. Laukaitis Decl. ¶ 14.

The claims process is designed to facilitate participation by allowing Settlement Class

Members to submit claims through a simplified tear-off claim form for Pro Rata Cash Payments or electronically through the Settlement Website or by mail.

**Attorneys' Fees and Expenses and Service Award**

Proposed Class Counsel may request a fee of up to one-third of the Settlement Fund, or $1,408,333.33, plus reimbursement of litigation expenses of up to $35,000. S.A. ¶ 9.1. Any award of attorneys' fees and expenses shall be paid exclusively from the Settlement Fund. *Id*. Class Counsel may also request a service award of up to $5,000 for the Settlement Class Representative to be paid exclusively from the Settlement Fund. *Id*. Service awards of this size are reasonable. *See In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg. In re: Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg.*, No.115MD2627AJTTRJ, 2020 WL 5757504, at *3 (E.D. Va. Sept. 4, 2020) (granting service award of $5,000). Proposed Class Counsel will move for fees, expenses, and service award 60 days after the Notice Date. S.A. Settlement Timeline.

**Releases**

The Settlement Class will release Telmate from claims that were or could have been asserted in this case. The releases are detailed in the Settlement Agreement. S.A. ¶¶ 1.32, 1.33, 1.48, 8.1. The release here is limited to only those claims that arise from the Security Incident. Claims arising from any other materially distinct factual predicates are not released. *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 91 F.4th 174 (4th Cir. 2024).

## IV. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AND DIRECT NOTICE TO THE SETTLEMENT CLASS

### A. Legal Standards

In the event of a settlement and proposal to certify a class for settlement purposes, the Court must determine whether to issue notice to the class. Fed. R. Civ. P. 23(e)(1). The parties are obligated to provide sufficient information to enable the Court to determine whether notice is appropriate, and the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id.* Moreover, Rule 23(e)(2) provides that a proposed settlement may be approved only after a hearing and on a "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval of a proposed settlement is committed to the sound discretion of the court. *Berry v. Schulman*, 807 F.3d 600, 608 (4th Cir. 2015). In determining whether a settlement is fair, reasonable, and adequate, the Court must consider whether:

> (A) the class representative and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Court's Rule 23(e) obligations are addressed with a "two-level analysis." *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009). To determine whether a settlement is fair, the Court considers the four factors set forth by the Fourth Circuit in *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991): "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel . . . ." To determine whether a settlement is

adequate, the courts also look to: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id.* There is a "strong presumption in favor of finding a settlement fair." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08cv1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) (internal quotation omitted).

In making the preliminary approval determination, the Court does not address the ultimate question of whether the proposed Settlement is fair, reasonable, and adequate; this analysis is reserved for the second stage of the settlement approval process. Instead, the first stage of the settlement approval process is focused on whether the settlement is sufficiently adequate to permit notice to be sent to the class. *See Hall v. Higher One Machines, Inc.*, No. 5-15-CV-670-F, 2016 WL 5416582, at *5 (E.D.N.C. Sept. 26, 2016) ("If the proposed settlement is preliminarily acceptable, the court then directs that notice be provided to all class members who would be bound by the proposed settlement in order to afford them an opportunity to be heard on, object to and opt out of the settlement.").

For purposes of preliminary approval, evaluation under these enumerated factors confirms that the proposed settlement is fair, adequate, and reasonable; accordingly, the Court should direct that notice of the Settlement issue to the Settlement Class.

"When a settlement is reached prior to Rule 23 certification, the law permits a class to be certified solely for the purposes of settlement." *Gamas v. Scott Farms, Inc.*, No. 5:13-CV-447-FL, 2014 WL 12546373, at *2 (E.D.N.C. Dec. 24, 2014). A district court faced with a settlement-only class need not inquire whether the class would present intractable problems with trial management,

but must determine whether the remaining requirements for class certification are satisfied. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To approve a class settlement, the Court must still consider the requirements for class certification under Rule 23. *In re NeuStar, Inc. Sec. Litig.*, 2015 WL 5674798, at *2 (E.D. Va. Sept. 23, 2015). The Settlement Class must also satisfy one of the categories of Rule 23(b). *Id*. However, the Court may disregard the manageability concerns of Rule 23(b)(3) because the Court may properly consider that there will be no trial. *Amchem*, 521 U.S. at 620.

As part of the preliminary approval process, the district court must also approve the notice of the settlement that the Parties propose be sent to Class Members. *See* Fed. R. Civ. P. 23(c)(2)(B). The notice must comport with due process and provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id.*; *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). Rule 23 leaves the form of the notice to the Court's discretion. *See Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 227 (E.D. Va. 2003) ("a court may exercise its discretion to provide the best notice practicable under the circumstances."); *see also* Fed. R. Civ. P. 23(c)(2)(B).

**B. The Class Was Adequately Represented.**

"[T]he adequacy requirement is met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's attorneys are 'qualified, experienced, and generally able to conduct the litigation.'" *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 567 (E.D. Va. 2016). Here, the Settlement Class Representative has the same interests as other class members, as she is asserting the same claims and shares the same injuries. Further, Proposed Class Counsel's experience and qualifications warrant his appointment as Class Counsel in this litigation, and the record shows proposed Class Counsel worked diligently to litigate and ultimately bring this case to resolution. Laukaitis Decl. ¶¶ 2-7, 16; *see also McNally v. Infosys*

*McCamish Systems, LLC*, No. 1:24-cv-00995 (N.D. Ga.) (Mr. Laukaitis served as co-lead class counsel; $17.5 million common-fund settlement affecting approximately 3.7 million individuals); *Bianucci v. Rite Aid Corp.*, No. 2:24-cv-03356 (E.D. Pa.) (Mr. Laukaitis served as co-lead class counsel; $6.8 million settlement approved in 2025 despite defendant's bankruptcy); *In re Prudential Financial, Inc. Data Breach Litigation*, No. 2:24-cv-6818 (D.N.J.) (Mr. Laukaitis was appointed class counsel; $4.75 million settlement affecting approximately 2.5 million individuals).

### C. The Proposed Settlement Was Negotiated at Arm's Length.

The Court can safely conclude this settlement was negotiated at arm's length, without collusion, based on the terms of the settlement itself; the length and difficulty of the negotiations; and the involvement of an experienced mediator, Jill R. Sperber, Esq. *See In re NeuStar*, 2015 WL 5674798, at *10 (adversarial encounters support a finding of arms' length negotiations); *see also* Comment to December 2018 Amendment to Fed. R. Civ. P. 23(e) ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."). This factor supports a finding that the Court will likely be able to approve the settlement.

### D. The Court Will Likely Be Able to Find That the Relief Provided by the Settlement Is Adequate.

The relief offered to Class Members in the Proposed Settlement is more than adequate under the factors outlined in Rule 23(e)(2)(c). One useful metric for evaluating the monetary value of a data breach settlement is the gross settlement amount on a per-class-member basis. This Settlement – with a per-person recovery of roughly $9.80 ($4.225 million divided by 431,031 class members) - is within the range, and greater than other data breach class actions preliminarily approved by EDVA courts. *See, e.g., In re Capital One Consumer Data Security Breach Litigation,* No. 1:19-md-02915-AJT-JFA (E.D. Va. Sept. 13, 2022) ($190 million common fund for

approximately 98 million class members, or approximately $1.94 per class member); *In re R&B Corp. of Virginia d/b/a Credit Control Corp., Data Security Breach Litig.* No. 4:23-cv-00066-JKW-RJK (E.D. Va.) (granting preliminary approval to a $1,613,300.45 non-reversionary common fund for 731,744 class members, equaling $2.20 per person); *Rodriguez v. Stratford University*, No. 1:22-cv-01048-MSN-WEF (E.D. Va.) (78,894 people and a $580,000 common fund, or approximately $7.35 per class member); *Tiller v. The Hilb Group Operating Company, LLC*, No. 3:23-cv-00759 (E.D. Va.) (approving $1,600,000 non-reversionary common fund for 108,954 class members, equaling $14.68 per person); *May v. Five Guys Enterprises*, No. 1:23-cv-00029 (E.D. Va.) (approving $700,000 non-reversionary common fund for 37,922 class members, equaling $18.45 per person).

Proposed Class Counsel, with his experience in data breach class actions, strongly believes that the relief is fair, reasonable, and adequate. Laukaitis Decl., ¶ 10. Proposed Class Counsel is joined in this assessment by Plaintiff's counsel, Lee A. Floyd of Floyd Law, who brings decades of experience with data privacy litigation to bear on Plaintiff's behalf. The Court may rely upon such experienced counsel's collective judgment. *See, e.g.*, *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel."). That the relief is fair, reasonable, and adequate is further confirmed by considering the four specific factors enumerated in Rule 23(e)(2).

**E. The Costs, Risks and Delay of Trial and Appeal.**

Plaintiff faces significant risks and costs should she continue to litigate this action, due to the potential expense and length of continued proceedings necessary to prosecute the litigation against Telmate through motion practice, trial, and potential appeals. The Court need look no

further than the pending Motion to Dismiss (ECF No. 22) to see the litigation risks here. Even at the pleadings stage, this is a hotly contested case with no assurance of success. Defendant challenged Plaintiff's Article III standing in its Motion to Dismiss, and that issue—particularly in light of the Fourth Circuit's decision in *Holmes*—presented a meaningful litigation risk. Defendant agrees only for purposes of this Settlement that Plaintiff has sufficiently alleged standing.[2] Further, if Plaintiff prevailed on her intended motion for class certification and successfully defeated Defendant's intended motions, thus proceeding to trial, Plaintiff would have faced significant risk, cost, and delay. Plaintiff faces the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation.

In contrast to the risks, costs, and delays posed by continued litigation and potential trial, the proposed Settlement provides certain, substantial, and immediate relief to the proposed Settlement Class without delay. It ensures that Settlement Class Members who submit valid claims for Documented Out-of-Pocket Losses or Pro Rata Cash Payments will receive compensation without the risks and delays of continued litigation. The substantial costs, risks, and delays associated with a trial and appeal support a finding that the proposed Settlement is adequate.

**F. The Method of Distributing Relief is Effective.**

The distribution process will be efficient and effective. Counsel specifically structured the Settlement to maximize participation by minimizing procedural barriers to recovery. Unlike many data breach settlements that require lengthy claim forms or supporting documentation for baseline benefits, Settlement Class Members may obtain a Pro Rata Cash Payment through a simplified claim process that requires no supporting documentation. The available relief is clearly detailed in

[2] Defendant agrees, for purposes of this Settlement only, that Plaintiff has alleged Article III standing, but reserves all rights to contest standing, as articulated in the Motion to Dismiss. ECF No. 22.

the Notice, which is designed to provide the best notice practicable to the Settlement Class and lays out the benefits to which Settlement Class Members are entitled upon submission of an approved claim.

As an initial matter, the proposed Notice Plan includes direct individual notice by mailed postcard, together with supplemental publication, digital, search, social media, and correctional-facility notice. S.A. ¶¶ 1.24, 5.1. The total potential Settlement Class size is approximately 431,031 people, and the Settlement Administrator will use reasonable address-search and updating procedures to identify mailing addresses for direct notice. *Id*. The Notice Plan, combining direct and supplemental notice, is designed to achieve approximately eighty percent (80%) reach. *Id*.; Laukaitis Decl. ¶ 14.

Therefore, Settlement Class Members will receive effective and efficient notice of the two categories of relief, which will be distributed as follows. *First*, Settlement Class Members may submit claims for Documented Out-of-Pocket Losses online through the Settlement Website or by mail. Settlement Class Members must submit a Claim Form accompanied by reasonable documentation showing the claimed expenses. S.A. ¶ 3.3. If a Claim Form is incomplete or deficient, the Settlement Administrator will give the claimant thirty days to cure the deficiency. S.A. ¶ 4.1. A Settlement Class Member may also appeal the Settlement Administrator's determination within thirty days after receiving notice of it. Id. ¶ 4.3.

*Second*, Settlement Class Members may utilize the simplified "tear-off" claim form described above to claim the Pro Rata Cash Payments without submitting documentation.

Because Settlement Class Members may make claims through a streamlined tear-off claim form, an easy-to-use online form, or by mail, the method of distributing the relief is both efficient and effective, and the proposed Settlement is adequate under this factor.

**G. The Terms Relating to Attorneys' Fees are Reasonable**

Proposed Class Counsel will request a fee of up to one-third of the $4,225,000.00 non-reversionary common fund, which is the value conferred by the Settlement on the Settlement Class, and for reimbursement of reasonable expenses incurred in prosecuting and settling this case. S.A. ¶ 9.1. Where, as here, a class settlement creates a non-reversionary common fund, fees are awarded on a "percentage of the fund" approach. *See, e.g.*, *Transurban*, 318 F.R.D. at 575; *see also Tiller v. Hilb Grp. Operating Co., LLC*, No. 3:23-cv-00759 (E.D. Va.) (awarding attorneys' fee of 33.3% of the common fund); *Darrin v. Huntington Ingalls*, No. 4:23-cv-00053 (E.D. Va.) (awarding attorneys' fee of 33.3% of the common fund); *Rodriguez v. Stratford University*, No. 1:22-cv-01048-MSN-WEF (E.D. Va.) (awarding attorneys' fee of 33.3% of the common fund). Under the Settlement Agreement, Plaintiff's request for Attorneys' Fees and Expenses will be filed with the Court 60 days after the Notice Date. In the settlement negotiations, attorneys' fees were not discussed, and the Parties negotiated only the total amount of the Settlement Fund. Laukaitis Decl. ¶ 7. The ultimate fee award will be based on an application to the Court based on Fourth Circuit law, with the opportunity for comment from Settlement Class Members.

Importantly, the Settlement Agreement is not conditioned upon the Court's approval of the fee award. S.A. ¶ 9.2. Accordingly, at this stage, the Court can and should conclude that it is likely to approve the Settlement for purposes of sending notice to the Settlement Class, even if it has not yet concluded whether and in what amount it would award attorneys' fees and expenses. The proposed Settlement is adequate under this factor.

**H. Any Agreement Required to be Identified under Rule 23(e)(3).**

Rule 23(e) mandates that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal," and that the Court must then consider any

such agreements when determining whether the relief provided in the settlement is adequate. *See* Fed. R. Civ. P. 23(e)(2)-(3). Here, there are no such agreements.

**I. The Proposed Settlement Treats Class Members Equitably.**

Finally, the proposal treats all class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). All Settlement Class Members will have the same opportunity to file a claim for Documented Out-of-Pocket Losses and Pro Rata Cash Payments. This means that monetary compensation will be apportioned in accordance with each claimant's alleged injury. In the event claims exceed the available settlement funds, all claims will be reduced *pro rata*, with no class member obtaining any greater relative benefit over another. The factor likewise supports a finding that the Court will be able to approve the Proposed Settlement and that class notice is appropriate.

**J. The Court Will Likely Be Able to Certify the Settlement Class for Purposes of Judgment**

To issue notice, the Court should decide it will "likely be able to . . . certify the class for purposes of judgment." Fed. R. Civ. P. 23(e)(1)(B); *Amchem*, 521 U.S. at 620. Such a decision should not be difficult. Settlement classes are routinely certified in similar consumer data breach cases. *See, e.g., In re Capital One Consumer Data Sec. Breach Litig.*, No. 1:19md2915 (AJT/JFA)*,* Doc. 118 (E.D. Va. Feb. 7, 2022) (certifying a data breach settlement class of approximately 98 million members with a $190 million common fund); *Abubaker v. Dominion Dental USA, Inc.*, No. 1:19-cv-01050, 2021 WL 6750844 (E.D. Va. Nov. 19, 2021) (Brinkema, J.) (certifying a data breach settlement class of approximately 2,964,778 members with a $2 million cash fund); *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, No. 1:16-c-03025, 2019 WL 3183651 (D. Md. July 15, 2019) (certifying a data breach settlement class of approximately 61,000 members with a $3.25 million non-reversionary fund). There is nothing different about this case, as demonstrated by an examination of the requirements of Rules 23(a) and (b).

1. **Rule 23(a) Requirements Are Satisfied.**

***Numerosity:*** The proposed class consists of approximately 431,031 U.S. residents, indisputably rendering individual joinder impracticable. *See Jeffreys v. Commc'ns Workers of Am. AFL–CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003) (noting that "where the class numbers twenty-five or more, joinder is generally presumed to be impracticable").

***Commonality:*** "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury, such that all their claims can productively be litigated at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011) (internal citations omitted). This requires that the determination of the common question "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. "Even a single common question will do." *Id.* at 359.

Rule 23(a)(2)'s commonality requirement is met where, as here, the defendant engaged in a common course of conduct. *Fisher v. Virginia Elec. & Power Co.*, 217 F.R.D. 201, 223 (E.D. Va. 2003). All Settlement Class Members are alleged to have suffered the same injury—theft of their personal data in the Security Incident—and are asserting the same legal claims. Accordingly, common questions of law and fact abound. *See, e.g.*, *Abubaker*, 2021 WL 6750844, at * 3.

***Typicality:*** Typicality under Rule 23(a)(3) requires an inquiry into the "representative parties' ability to represent a class . . . ." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998). In other words, the "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Deiter*, 436 F.3d at 466-67. This requirement is readily satisfied in data

breach cases. The Settlement Class Representative's claims are typical of other class members because they arise from the same Security Incident and involve the same overarching legal theories, including the theories that Telmate breached implied contracts with the Settlement Class Representative and Settlement Class Members and failed in its common-law duty to protect their personal information. *See, e.g.*, *Abubaker*, 2021 WL 6750844, at *3.

***Ascertainability:*** Rule 23 also contains the implied requirement that the court be able to "readily identify the class members in reference to objective criteria." *EQT Production Co. v. Adair*, 764 F.3d 247, 358 (4th Cir. 2014). A proposed class representative "need not be able to identify every class member at the time of certification." *Id*. "[E]xtensive and individualized fact-finding" or "mini-trials" render certification inappropriate. *Id*. (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)). Settlement Class Members are identifiable by objective criteria through Defendant's records and the Class List provided to the Settlement Administrator. Accordingly, the Settlement Class is ascertainable.

***Adequacy of Representation:*** "The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. Settlement Class Representative does not have any interests antagonistic to other class members and has retained lawyers who are well-qualified and experienced, satisfying the adequacy requirement. See Laukaitis Decl.

**2. Rule 23(b)(3) Requirements Are Satisfied.**

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." One

part of the superiority analysis—manageability—is irrelevant for purposes of certifying a settlement class. *Transurban*, 318 F.R.D. at 569.

***Predominance:*** Rule 23(b)(3)'s predominance requirement tests whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The predominance inquiry measures the relative weight of the common questions against individual ones. *Amchem*, 521 U.S. at 624. "If the 'qualitatively overarching issue' in the litigation is common, a class may be certified notwithstanding the need to resolve individualized issues." *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 214 (E.D. Va. 2015) (citing *Ealy v. Pinkerton Gov't Servs.*, 514 F. App'x 299, 305 (4th Cir. 2013)). Common liability issues often predominate where class members "all assert injury from the same action." *Gray v. Hearst Commc'ns, Inc.*, 444 F. App'x 698, 701–02 (4th Cir. 2011); *see also Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010) (finding common issues predominated where class members were exposed to "the identical risk of identity theft in the identical manner by the repeated identical conduct of the same defendant.").

Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of alleged conduct by Telmate. *See, e.g.*, *Abubaker*, 2021 WL 6750844, at *3; *Equifax*, 2020 WL 256132, at *13; *Anthem,* 327 F.R.D. at 311-16. The focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." *Anthem*, 327 F.R.D. at 312.

***Superiority:*** "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy . . . ." 7A Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1779 (3d ed. 2005). Litigating the same claims of 431,031 persons through individual litigation would be impracticable and

inefficient. The superiority requirement thus is satisfied. *See Equifax*, 2020 WL 256132, at *14; *Anthem*, 327 F.R.D. at 315-16.

**K. The Court Should Approve the Notice Plan, Notices, and Claim Form, and Appoint the Settlement Administrator.**

To satisfy the requirements of both Rule 23 and due process, Rule 23(c)(2)(B) provides that, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly requires that notice be reasonably disseminated to those who would be bound by the court's judgment. Fed. R. Civ. P. 23(e)(1). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Plaintiff requests that the Court appoint Kroll Settlement Administration LLC as the Settlement Administrator and approve the Notice Plan. Telmate will generate and provide to the Settlement Administrator a Class List within seven (7) days of the preliminary approval order directing class notice. S.A. Settlement Timeline. Using the Class Data, Kroll will employ reasonable address-search and updating procedures and provide direct notice by mailed postcard to Settlement Class Members for whom mailing addresses are identified. S.A. ¶¶ 1.24, 5.1. The Notice Plan will supplement direct mailed notice with publication, targeted digital advertising, search advertising, social media advertising, and reasonable efforts to provide notice within correctional facilities. *Id.* The Notice Plan is designed to achieve approximately eighty percent (80%) reach, which falls within the range recognized as effective by the Federal Judicial Center. *See, e.g.*, Federal Judicial Center, "Judges' Class Action Notice and Claims Process Checklist and

Plain Language Guide" (2010) (recognizing the effectiveness of notice that reaches between 70 and 95 percent of the class). When implemented, the Notice Plan will provide the best notice practicable under the circumstances. Laukaitis Decl. ¶¶ 12-14.

The Court should also approve the proposed forms of notice attached to the Settlement Agreement (Exhibit 1) as Exhibits B and C ("Notices"), which satisfy all of the criteria of Rule 23. The Notices are clear, straightforward, and provide persons in the proposed Settlement Class with enough information to evaluate whether to participate in the settlement. The Notices also advise the proposed Settlement Class how to exclude themselves from the settlement, and how to object to the settlement, including the requested attorney fees and costs. Thus, the Notices satisfy the requirements of Rule 23. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985) (explaining a settlement notice must provide settlement class members with an opportunity to present their objections to the settlement).

Finally, the Court should approve the Claim Form attached to the Settlement Agreement (Exhibit 1) as Exhibit A. The Claim Form is written in plain language and may be submitted online or by mail, and the Short Notice includes a detachable Claim Form with prepaid return postage for Settlement Class Members seeking a Pro Rata Cash Payment.

**L. The Court Should Appoint Kevin Laukaitis as Class Counsel.**

When certifying a class, Rule 23 requires a court to appoint class counsel that will fairly and adequately represent the class members. Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court considers counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

The Court should appoint Proposed Class Counsel Kevin Laukaitis of Laukaitis Law LLC as Class Counsel. Throughout this litigation, Proposed Class Counsel has investigated the claims, litigated the action, and negotiated the proposed settlement, demonstrating the experience and resources contemplated by Rule 23(g). The Court should thus appoint Kevin Laukaitis of Laukaitis Law LLC as Class Counsel under Rule 23(g).

**M. Timeline of Settlement Events**

For the Court's convenience, Plaintiff proposes the following dates and deadlines leading to a final approval hearing.

| ACTION | DATE |
|---|---|
| Defendant Provides Class Member List | Within seven (7) days following entry of Order Granting Preliminary Approval |
| Notice Program Shall Commence | 30 days following entry of Order Granting Preliminary Approval |
| Notice Date | 30 days following entry of Order Granting Preliminary Approval |
| Motion for Attorneys' Fees, Expenses, and Service Award to the Plaintiff | 60 days after the Notice Date |
| Exclusion / Opt-Out Deadline | 90 days after Notice Date |
| Objection Deadline | 90 days after Notice Date |
| Deadline to Submit Claims | 90 days after Notice Date |
| Final Approval Brief and Response to Objections Due | 30 days before the Final Approval Hearing |
| Final Approval Hearing | (To be scheduled approximately 110 days after Notice Date) |

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order: (1) preliminarily approving the Settlement; (2) preliminarily

certifying the Settlement Class for settlement purposes; (3) appointing Amber Cooper as Settlement Class Representative; (4) appointing Kevin Laukaitis of Laukaitis Law LLC as Class Counsel pursuant to Rule 23(g); (5) appointing Kroll Settlement Administration LLC as Settlement Administrator; (6) approving the Notice Plan and the form and manner of the Notices and Claim Form; and (7) scheduling the Final Approval Hearing.

Dated: August 12, 2026

Respectfully submitted,

*/s/ Lee A. Floyd*
Lee A. Floyd, VSB #88459
**FLOYD LAW**
626 East Broad Street, Suite 300
Richmond, VA 23219
T: (804) 529-0000
lee@floydpc.com

Kevin Laukaitis (*admitted pro hac vice*)
**LAUKAITIS LAW LLC**
954 Avenida Ponce De León
Suite 205, #10518
San Juan, PR 00907
Telephone: 215-559-6072
klaukaitis@laukaitislaw.com

*Counsel for the Plaintiff and the Proposed Settlement Class*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 12, 2026, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF System and was thereby served on all counsel of record.

*/s/ Lee A. Floyd*
Lee A. Floyd